IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2017

**STATE OF TENNESSEE v. CAMEO ANTOINETTE EDWARDS**

**Appeal from the Circuit Court for Haywood County**
**No. 7282      Clayburn Peeples, Judge**

———————————————————

**No. W2015-01398-CCA-R3-CD**

———————————————————

Following a bench trial, the Defendant, Cameo Antoinette Edwards, was convicted in the Haywood County Circuit Court of assault and contributing to the delinquency of a minor, both Class A misdemeanors. The trial court subsequently sentenced her to concurrent terms of eleven months, twenty-nine days for each conviction, suspended to supervised probation following service of thirty days in the county jail. On appeal, the Defendant argues that the evidence is insufficient to sustain her convictions and that the trial court erred by not granting her full probation. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Lance R. Chism, Memphis, Tennessee (on appeal); and Didi Christie, Trenton, Tennessee, for the appellant, Cameo Antoinette Edwards.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald M. Campbell and Hillary Parham, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the Defendant's May 4, 2014 participation with her seventeen-year-old daughter in an attack on a girl that the daughter apparently considered a romantic rival for a boy's affection. According to the State's proof at trial, the victim, the victim's sister, and the victim's cousin were walking down the street after visiting the boy when the Defendant pulled her vehicle up beside them, encouraged her daughter to attack the victim, prevented the victim's sister and cousin from going to the victim's aid, and finally herself physically attacked the victim. The Defendant was subsequently indicted for assault and contributing to the delinquency of a minor, found guilty of the indicted offenses at the conclusion of an April 15, 2015 bench trial, and sentenced to concurrent terms of eleven months, twenty-nine days in the county jail, suspended to supervised probation after service of thirty days incarceration.

The following facts were set out by the trial court in a June 30, 2017 statement of the evidence:

> The Court found the facts to be as follows: Three young girls, [the victim] and [S.W.,][1] sisters, and [E.L.], a cousin to the sisters, went, on an afternoon, to the home of a young man whose first name was Katarion. (Last name unknown.) [S.W.] was nine years old at the time, and [E.L.] was 14 years of age.
>
> The stated purpose of their visit was to take a set of headphones to Katarion, who was to return to his Job Corps assignment later that afternoon.
>
> After delivering the headphones, the three set out on foot toward the home of [E.L.] At some point on their journey an automobile driven by [the D]efendant stopped next to where they were walking. It is at this point that the evidence became contested. [The victim] testified that once the car came to a stop, [J.E.], daughter of [the D]efendant, exited the vehicle and began striking her, [the victim], repeatedly. According to [the victim's] testimony, [the D]efendant, then exited the vehicle as well, and held the other two girls back while [the D]efendant's daughter continued to strike [the victim].
>
> At one point, [the victim] testified, [the D]efendant also struck her on the head, after which [the D]efendant and her daughter then returned to

---

[1] To protect the privacy of the minors involved in the case, we have elected to identify them by their initials.

[the D]efendant's vehicle and drove away, [the D]efendant cursing as she left the scene of the affray.

On cross-examination, [the victim] testified that she did not know whether [the D]efendant's striking her was accidental or intentional. She also testified that she did not see a stop sign in the area.

[E.L.] testified that she and the other two girls had gone to the young man's house to give him a pair of headphones and that as they were walking home [the D]efendant's vehicle stopped at their location. According to [E.L.'s] testimony, [the D]efendant then urged her daughter, [J.E.], to exit the car and "fight [the victim]," which she, the daughter, did. At first, [E.L.] testified, [the D]efendant held [E.L.] and [S.W.] back, away from the fight, but at some point [the D]efendant began striking [the victim] as well.

On cross-examination, [E.L.] testified that [the D]efendant stopped her vehicle "near" a stop sign.

The fight, such as it was, ended, according to [E.L.], when another automobile arrived at the scene, at which time [the D]efendant and her daughter "jumped back in the car" and drove away, with the [D]efendant cursing the girls as she drove away.

The testimony of [S.W.] was essentially the same as that of [E.L.].

The young man in question, Katarion, testified that he was a passenger in a vehicle driven by [the D]efendant at the time of the incident, that she was taking him back to Job Corps. He said that [the D]efendant's daughter, [J.E.], exited the vehicle and began fighting with [the victim], but that he did not see [the D]efendant's actions because he was watching the fight. He testified that the [D]efendant exited the car "just to make sure" but would not elaborate on what that phrase meant. He said the fight lasted "about ten seconds."

[J.E.], the young woman who began the fight, testified that she and her mother, the [D]efendant, had picked Katarion up to take him back to Job Corps, and at that time discovered that [the victim] had come to visit him. When she saw [the victim] walking down the street, she said, she jumped out of the vehicle and began hitting her.

- 3 -

She said she did not see [the Defendant] holding the other two girls and that she did not see [the Defendant] strike [the victim]. She testified that she, [J.E.], was in "state custody" because of a previous altercation between her and [the Defendant].

The [D]efendant testified that she and her daughter were taking Katarion back to Job Corps when they saw the three girls walking. As her vehicle approached the girls, she, [the D]efendant, slowed down to stop at a stop sign, and when she did, [the D]efendant said her daughter jumped from the car and began fighting.

She said she then exited the vehicle as a concerned parent, but denied holding the other two girls back, and she also denied striking [the victim]. She acknowledged that she did leave the scene upon the approach of another vehicle but denied that the vehicle's approach was the reason for her leaving the scene.

She also acknowledged that she did not inquire as to the condition of the girl her daughter had been assaulting, and also acknowledged that she had previously been convicted of assaulting her daughter, [J.E.].

After hearing all the proof and arguments, the Court came to the conclusion that the witnesses called by the State were credible and that whatever inconsistencies were in their testimony were inconsequential to the issue of [the D]efendant's guilt.

The [C]ourt did not find the [D]efendant or her daughter to be a credible witness and was convinced beyond a reasonable doubt that the [D]efendant was guilty of the offenses charged against her.

The record also contains four photographs of the victim's head that were admitted at trial. They appear to show a knot on the victim's forehead and a missing patch of hair on the side of her head.

At the April 20, 2015 sentencing hearing, the State introduced the Defendant's presentence report, which reflected that the thirty-five-year-old Defendant had a criminal history that included the following convictions: a 2013 conviction for DUI, second offense; a 2003 conviction for failure to appear; convictions in 2002 for driving without a license and failure to appear; convictions in 2000 for violation of probation, criminal trespass, failure to appear, criminal impersonation, driving with a revoked license, and possession of marijuana; and convictions in 1999 for assault, disorderly conduct, and

improper passing. The presentence report further reflected that the Defendant had additional criminal charges that had been dismissed, including 2014 charges for theft and domestic violence. The officer who prepared the report noted that the Defendant never completed or returned a questionnaire that had been sent to her to aid in the preparation of the report.

The Defendant testified she was thirty-five years old, married, and the mother of three children who were seventeen, eight, and seven. She said she had been employed for the past nine months at "Sitters Et Cetera" where her primary job duties entailed providing in-home companionship, medication reminders, and cleaning for "people who need help." She agreed she had gotten in "a lot of trouble" during her younger years. She further agreed that she had stayed out of trouble for approximately ten years until her recent DUI, for which she had served forty-five days. She said she had gotten her driver's license reinstated and taken steps to avoid another DUI.

The Defendant further testified that she was "a great person" and a "good mother" who had "made a mistake" by "mak[ing] the wrong turn." She said she wanted to apologize to the victim and her mother because she "hate[d] that everything happened." However, she denied any responsibility for the attack, stating:

> I don't want to sit up and just be the type of person to not feel sorry for what happened to her child because if it was my child I would be upset, but I did not have anything to do with it. I went the wrong way when I should have went another way, not knowing that my child was going to jump out of the car and I am a good mother and a loving person.

Upon questioning by the trial court, the prosecutor stated that the Defendant had a DUI, first offense, conviction in 2010, which was not included in the presentence report. On cross-examination by the State, the Defendant acknowledged that her two younger children were in the vehicle with her when she committed her last DUI. She further acknowledged that while the instant case was pending, she "picked up another domestic assault charge with [her] daughter," to which she had pled guilty. The Defendant grudgingly admitted that she had been charged with various other crimes during the past ten years, including shoplifting in 2013, but said that they were dismissed because she was not guilty of those offenses. She denied that she lacked respect for the law and reiterated that she had not assaulted the victim and was not responsible for her daughter's actions.

At the conclusion of the hearing, the trial court noted that most of the Defendant's criminal record occurred more than ten years previously but that there was "a fairly substantial amount of activity that's recent." Based on the Defendant's record, the court

sentenced her to concurrent sentences of eleven months, twenty-nine days for each conviction, the maximum sentences for her Class A misdemeanor convictions. The court concluded that the nature of the offenses did not warrant "any sort of substantial confinement" but, "in view of [the Defendant's] record," ordered that she serve thirty days in confinement. Because the Defendant was employed, the court ordered that she be allowed to serve the time on weekends if possible.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant first contends that the evidence is insufficient to sustain her convictions. Specifically, she points to minor inconsistencies in the accounts provided by the State's witnesses, such as whether or not there was a stop sign nearby, to argue that their testimony was not credible. The State notes that credibility determinations were within the province of the trial court as the trier of fact and argues that the State presented ample evidence through its witnesses to sustain the convictions. We agree with the State.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). It is not the role of this court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

To sustain the assault conviction, the State had to prove beyond a reasonable doubt that the Defendant intentionally, knowingly, or recklessly caused bodily injury to the victim. See Tenn. Code Ann. § 39-13-101(a)(1). To sustain the conviction for contributing to the delinquency of a minor, the State had to prove beyond a reasonable doubt that the Defendant aided, abetted, or encouraged her daughter in her attack of the victim or participated with her daughter in the attack of the victim. See Tenn. Code Ann. § 37-1-156(a)(1).

In its statement of facts, the trial court specifically found that the State's witnesses were credible and that any inconsistencies in their testimony were inconsequential, as well as that neither the Defendant nor her daughter was credible. The evidence, viewed in the light most favorable to the State, established that the Defendant not only encouraged her daughter to attack the victim but also struck the victim herself. The evidence further established that the victim was injured as a result of the attack. Accordingly, we affirm the Defendant's convictions for assault and contributing to the delinquency of a minor.

## II. Denial of Full Probation

The Defendant contends that the trial court erred by not granting her full probation. She points out that most of her prior criminal convictions, all misdemeanors, occurred when she was in her late teens and early twenties, whereas she is now "a mature, married thirty-five year old" mother of three who obtained her GED in 2003 and is currently employed as a caretaker of "people in need." She asserts that the facts in her case are "not horrendous" and argues that granting her full probation would subserve the ends of justice and be in the best interest of both herself and the public. The State argues that the trial court acted within its discretion in denying the Defendant's request for full probation. We, again, agree with the State.

A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the advisory sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527.

We find no abuse of discretion in the trial court's denial of the Defendant's request for full probation. As the trial court noted, in addition to the convictions she received in her late teens and twenties, the Defendant also had a fairly substantial record of more recent criminal activity, including multiple convictions for DUI and a conviction for domestic assault. We also note that the Defendant failed to show any remorse during the sentencing hearing and instead claimed that her only mistake was in making a wrong turn in her vehicle. There was ample support in the record for the trial court's denial of full probation. We, therefore, affirm the sentencing determinations of the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE